EXHIBIT 1

TO

VERIFIED COMPLAINT IN REM

DECLARATION OF MATTHEW MOORE

## DECLARATION OF MATTHEW J. MOORE
## IN SUPPORT OF VERIFIED COMPLAINT *IN REM*

I, Matthew J. Moore, provide the following information under the penalty of perjury, as provided by 28 U.S.C. § 1746, and declare that the following is true and correct to the best of my knowledge, information and belief.

### A.     *Declarant's Background*

1. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"). I have been a TFO since approximately 2013. Prior to becoming a DEA TFO, I worked as a Patrol Officer for the LaVergne Police Department in Rutherford County, Tennessee for approximately two years. I have approximately ten years of law enforcement experience and approximately eight years of narcotic and controlled substance investigative experience. I am currently assigned to the Nashville District Office of the DEA, Nashville, Tennessee. The federal crimes I am assigned to investigate include but are not limited to violations of 21 U.S.C. §§ 841 and 846.

2. I am familiar with the following statutes pertinent to this Affidavit:

   a. 21 U.S.C. § 841(a)(1) makes it a violation to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ";

   b. 21 U.S.C. § 846 makes it a violation to attempt or conspire to commit a violation of 21 U.S.C. § 841; and

   c. 21 U.S.C. § 881(a)(6) provides that moneys furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or any money used or intended to be used to facilitate any violation of 21 U.S.C.§ 801, *et seq.*, including 21 U.S.C.§ 841 and 21 U.S.C.§ 846, are subject to forfeiture.

1

**B.    Item Sought to be Forfeited**

3.    I make this Declaration in support of the Verified Complaint *In Rem* seeking forfeiture of approximately $13,780.00 United States currency ("Defendant Property") seized at the Nashville International Airport in the Middle District of Tennessee on August 31, 2021 from a bag carried by Marcus Sisk.

**C.    Basis of Information**

4.    The information in this Declaration and the basis for my belief that the Defendant Property is subject to forfeiture to the United States were obtained from my personal observations, training and experience; information gathered from documents which were pertinent to this investigation, including but not limited to records obtained from law enforcement databases; information gathered during interviews of and conversations with other law enforcement officers and civilians; written reports and investigations conducted by other law enforcement officers including, Robertson County Sherriff's Department; Tennessee and California Secretary of State corporation records. I have not included every item of information known to me concerning the Defendant Property and the facts surrounding this Declaration, but only those relevant to a determination that the Defendant Property is subject to forfeiture.

**D.    Facts**

5.    On August 30, 2021, the Nashville District Office Task Force Group 2, Airport Interdiction Group, received information from a DEA Special Agent in the Miami Field Division, Fort Lauderdale Airport Interdiction Team, regarding the suspicious travel itinerary of Marcus Troy Sisk ("Sisk"). Sisk was scheduled to travel round trip from the Nashville Airport (BNA) to the Los Angeles Airport (LAX) via American Airlines flight 1063 on August 31, 2021, at 8:15

2

a.m., and return on September 3, 2021. Los Angeles, based upon my training and experience, is a known source city for illegal narcotics.

6. Records showed that Sisk's reservation was made on August 29, 2021. Based on my training and experience, drug traffickers, couriers, and money mules transporting drug related funds or contraband often book travel within a day or two of the flight to avoid detection by law enforcement.

7. Sisk's criminal history, obtained through the National Crime Information Center (NCIC), revealed the following narcotics related arrests:

   a. 2012: Possession for Resale (narcotics not listed);

   b. 2021: Possession of Schedule VI with Intent, Possession of Firearm During Commission of Felony, and Resisting Arrest.

8. The most recent arrest was on August 22, 2021, approximately nine days earlier.

9. At approximately 7:37 a.m., investigators observed Sisk checking in for his flight at the American Airlines ticket counter. Sisk was in possession of a small carry-on bag and a large gray hard-sided roller luggage. Sisk appeared to be checking luggage. However, following his interaction at the American Airlines counter, Sisk walked toward the TSA screening point with both the carry-on luggage and hard-sided roller.

10. Metro Nashville Airport Authority ("MNAA") Detective Chris Swisher ("Det. Swisher") spoke with an American Airline employee who had assisted Sisk. The employee informed Det. Swisher that Sisk attempted to check the luggage. However, it was too late to check luggage for that flight. The employee further stated that the luggage smelled strongly of marijuana.

11. Based upon my training and experience, drug traffickers, couriers, and money mules will often arrive at the airport late, leaving very little time between arrival and flights. This

3

helps minimize the time in the airport with contraband or drug related funds, which might be detected by law enforcement.

12. Investigators observed Sisk return to the American Airlines ticket counter. TSA had determined that the luggage in Sisk's possession was too large for the TSA x-ray. Sisk missed his originally scheduled flight. Sisk rebooked his flight and checked his luggage. His new flight was scheduled to depart for Dallas Fort Worth ("DFW") at 9:35 a.m., via American Airlines flight 1103, with connection to Los Angeles ("LAX").

*Positive K-9 Alert to Checked Luggage*

13. At approximately 7:56 a.m., TFO Chris Burrell and Det. Swisher located the luggage labeled Sisk's name. TFO Burrell placed Sisk's luggage in an array of other luggage bound for DFW on Flight 1103. Det. Swisher introduced his reliable, narcotics-trained K-9, "Peggy," to the array of luggage. Peggy gave a positive indication to the presence of the odor of narcotics on Sisk's luggage.

14. TFO Burrell notified investigators at the TSA Screening point that the K-9 had given a positive alert to Sisk's checked luggage.

*Law Enforcement Encounter with Sisk*

15. After Sisk had passed through TSA screening, I and DEA Special Agent Walter Brightman ("SA Brightman") approached Sisk and identified ourselves as law enforcement officers with the DEA. We were dressed in street attire and did not have badges or a weapon exposed.

16. I informed Sisk that a K-9 alerted to his checked luggage. I asked if Sisk would be willing to speak to officers about it. Sisk agreed.

4

17. I asked if there were any narcotics in the luggage or any other reasons why a K-9 would alert to his luggage. Sisk stated that he had smoked marijuana recently, but there were no narcotics within the luggage.

18. I asked Sisk for consent to search the checked bag and carry-on, and he agreed.

19. TFO Derek Thornhill conducted a search of Sisk's carry-on luggage, the search resulted in the discovery of several bundles of United States currency, along with some clothing.

20. In response to additional questions, Sisk provided the following:

   a. he had approximately $13,000.00;

   b. the cash in his bag is all the money he has, so he didn't want to leave it; and

   c. Sisk was going to visit his uncle who owns a farm in California.

21. I asked Sisk if he would be willing to accompany investigators to a nearby office to discuss the U.S. Currency outside of public view. I explained that based on the recent narcotics related arrest, the positive K-9 alert to his luggage, and the large sum of currency, investigators believed the currency could be related to narcotics transactions. I explained to Sisk that he would have the opportunity to show the U.S. Currency was legitimately earned by speaking with investigators. Sisk agreed to accompany investigators to a nearby office.

*Sisk's Interview with Law Enforcement*

22. At approximately 8:05 a.m., Investigators, along with Sisk arrived at the TOIC office located on the D-Concourse. Sisk was reminded that he was not under arrest or being detained and was free to leave at any time. TFO Moore conducted an interview of Sisk; during which, Sisk provided the following information:

   a. he is in possession of approximately $13,000.00 dollars; of which, $5,800.00 was loaned to him by his girlfriend Kaleigh Allen, although he initially stated Allen provided $4,500.00;

b. he owns a landscaping company called "Sisk LLC" where he earns $300.00 to $400.00 a week;

c. he also has cash from withdrawing his 401K retirement fund and received unemployment for a time;

d. prior to working in landscaping, he worked for "Henderson" where he earned $1,000.00 a week;

e. about his recent arrest; Sisk stated that

   (A) he and Allen were arrested after being stopped by police;
   (B) he had a firearm and approximately 1 pound of marijuana in the car;
   (C) the charges against him and his girlfriend were going to be dropped; and
   (D) he bonded out on Monday.

f. he was actually going to San Francisco, and he was going to stay in California for a total of two weeks; and

g. he claims $30,000.00 to $40,000.00 in income on his taxes.

23. Sisk's story was not plausible. For instance, despite claiming to have plans to stay in California for two weeks near San Francisco, Sisk's return travel from Los Angeles was scheduled for September 3.

24. Similarly, based upon an online search of Tennessee Secretary of State records, Sisk LLC appears to be a five-member California entity operating in Tennessee. A review of records available online through the California Secretary of State, Sisk LLC was formed in 1995 and purports to be in the real estate leasing business. Sisk is not publicly listed as an officer or otherwise associated with Sisk, LLC, in any filings available through either the Tennessee or California Secretary of State websites.

25. I informed Sisk that investigators wished to run a narcotics trained K-9 on the U.S. Currency to determine if the money has been around narcotics. Sisk stated that he smokes marijuana every day, and recently smoked marijuana around the money. Sisk then retracted his

6

statement, saying that he smokes CBD every day, but that the dog will not be able to tell the difference.

### *K-9 Alert to the Currency and Sisk's Belligerence*

26. I asked Sisk if he wished to observe the K-9 process, Sisk stated that he did. At approximately 8:17 a.m., Investigators placed the U.S. Currency from Sisk's carry-on luggage in an unmarked box and placed that box in an array of other empty boxes.

27. Det. Swisher then introduced his narcotics detection trained K-9 "Peggy" to the array of boxes, at which time, Peggy gave a positive alert for the odor of narcotics on the box containing the U.S. Currency.

28. I explained to Sisk that the U.S. Currency in his possession was being seized as suspected drug proceeds and attempted to explain the federal seizure process. Sisk became angry and started shouting. TFO Burrell attempted to explain that proceeds derived from the sale of narcotics are subject to seizure. Sisk interrupted TFO Burrell by calling him racial and derogatory titles such as "Coon", "Uncle Tom", and other names.

29. TFO Burrell completed the DEA-12 receipt and asked Sisk to review his address for accuracy. Sisk confirmed the address was correct but continued to yell at investigators.

30. Det. Swisher escorted Sisk to the ticket counter area, where Sisk opted not to rebook his flight. Sisk informed Det. Swisher he was just going to take an Uber home.

### *Sisk's Prior Drug and Gun Arrest*

31. Investigators obtained the police report regarding Sisk's arrest on August 22, 2021. The following is a summary of the incident that occurred:

    a. On August 22, 2021, Sisk and another individual were subject to a vehicle traffic stop.

7

    b.     During the stop, the investigating officer observed an obvious odor of marijuana emanating from the vehicle.

    c.     The investigating officer notified the occupants that he would be conducting a search of the vehicle, at which time Sisk retrieved a backpack from the floorboard and fled on foot.

    d.     The officer chased Sisk who appeared to be trying to retrieve items from the backpack.

    e.     Sisk eventually dropped the backpack and entered a wooded area.

    f.     Inside the backpack, officers recovered approximately 1lb 9oz of marijuana and a 9mm pistol.

    g.     The search also found an 80-count box of empty sandwich bags and a marijuana cigar roller.

    h.     Investigators later located Sisk attempting to leave the area in a Lyft rideshare.

    i.     Sisk was in possession of $1,498.00 U.S. Currency at the time of his arrest.

32. Loomis performed an official count of the currency and determined that the Defendant Property constituted $13,780.00 U.S. Currency.

## E. CONCLUSION

33. Based upon the foregoing, there is a reasonable belief that the Defendant Property constitutes money furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. § 841 and 846, and/or proceeds traceable to such a controlled substance transaction and/or moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 841 and 21 U.S.C.§ 846.

34. Based upon the foregoing and my experience, the Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

I declare under the penalty of perjury as provided by 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

MATTHEW J. MOORE
Task Force Officer
Drug Enforcement Administration